**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**WICHITA DIVISION**

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  6:19-cv-01026 |
| | ) | |
| MIDWEST STEEL FAB, LLC, | ) | |
| | ) | |
| Serve Resident Agent: | ) | |
| Milo M. Unruh, Jr. | ) | |
| 300 W. Douglas, Suite 330 | ) | |
| Wichita, Kansas 67202 | ) | |
| | ) | |
| BUILDER'S REBAR, LLC, | ) | |
| | ) | |
| Serve Resident Agent: | ) | |
| Milo M. Unruh, Jr. | ) | |
| 300 W. Douglas, Suite 330 | ) | |
| Wichita, Kansas 67202 | ) | |
| | ) | |
| PALISADE ENTERPRISES, LLC, | ) | |
| | ) | |
| Serve Resident Agent: | ) | |
| Palisade Enterprises, LLC | ) | |
| 301 N. St. Francis | ) | |
| Wichita, Kansas 67202 | ) | |
| | ) | |
| PAL'S GLASS SERVICE, INC., | ) | |
| | ) | |
| Serve Resident Agent: | ) | |
| BD Registered Agent, Inc. | ) | |
| 301 N. Main, Suite 600 | ) | |
| Wichita, Kansas 67202 | ) | |
| | ) | |
| INTEGRATED GROUP HOLDINGS, INC., | ) | |
| | ) | |
| Serve Resident Agent: | ) | |
| BD Registered Agent, Inc. | ) | |
| 301 N. Main, Suite 600 | ) | |
| Wichita, Kansas 67202 | ) | |
| | ) | |

INTEGRATED PROPERTIES, LLC,   )
   )
   <u>Serve Resident Agent</u>:   )
   BD Registered Agent, Inc.   )
   301 N. Main, Suite 600   )
   Wichita, Kansas 67202   )
   )
BLU ROCK CONCRETE, LLC,   )
   )
   <u>Serve Resident Agent</u>:   )
   Tim Sinclair   )
   301 N. Francis Street   )
   Wichita, Kansas 67202   )
   )
SINCLAIR MASONRY, INC.   )
   )
   <u>Serve Resident Agent</u>:   )
   Milo M. Unruh, Jr.   )
   300 W. Douglas, Suite 330   )
   Wichita, Kansas 67202   )
   )
         Defendants.   )

## FIRST AMENDED COMPLAINT

Plaintiff, Philadelphia Indemnity Insurance Company, by and through counsel, and for its First Amended Complaint, states:

## PARTIES

1.     Plaintiff Philadelphia Indemnity Insurance Company (the "Surety") is a Pennsylvania corporation authorized to do business in the State of Kansas.

2.     Defendant Pal's Glass Service, Inc. ("Pal's Glass") is a Kansas corporation transacting business under the trade name "Pal's Glass". Pal's Glass was previously served with process in this lawsuit.

3.     Defendant Blu Rock Concrete, LLC ("Blu Rock") formerly Gorilla Concrete LLC is a Kansas limited liability company. Blu Rock was previously served with process in this lawsuit.

2

4.       Defendant Integrated Group Holdings, Inc. ("Integrated Group Holdings") is a Kansas corporation that from time to time transacts business under the trade name "Pal's Glass". Integrated Group Holdings was previously served with process in this lawsuit.

5.       Defendant Sinclair Masonry, Inc. ("Sinclair Masonry") is a Kansas corporation. Sinclair Masonry was previously served with process in this lawsuit.

6.       Defendant Integrated Properties, LLC ("Integrated Properties") is a Kansas limited liability company.  Integrated Properties was previously served with process in this lawsuit.

7.       Defendant Midwest Steel Fab, LLC ("Midwest Steel") is a Kansas limited liability company that may be served with process through its Resident Agent, Milo M. Unruh, Jr., at 300 W. Douglas, Suite 330, Wichita, Kansas 67202.

8.       Defendant Builder's Rebar, LLC ("Builder's Rebar") is a Kansas limited liability company that may be served with process through its Resident Agent, Milo M. Unruh, Jr., at 300 W. Douglas, Suite 330, Wichita, Kansas 67202.

9.       Defendant Palisade Enterprises, LLC ("Palisade Enterprises") is a Kansas limited liability company that may be served with process through its Resident Agent, Palisade Enterprises, LLC, at 301 N. St. Francis, Wichita, Kansas 67202.

## STATEMENT OF JURISDICTION

10.      The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332.  The parties, including the respective members of each limited liability company defendant, are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

## VENUE

11.     Venue is proper in this district under 28 U.S.C. § 1391 in that (a) all defendants are domiciled, reside and/or maintain their principal place of business in the State of Kansas; and/or (b) a substantial part of the claims, allegations and events giving rise to this action occurred in the State of Kansas; (c) the defendants are subject to personal jurisdiction in the State of Kansas at the commencement of this action; and (4) there is no district in which the action may otherwise be brought.

## GENERAL ALLEGATIONS

*The Underlying Events*

12.     Blu Rock and Sinclair Masonry have operated in the concrete and masonry business.

13.     Pal's Glass, Integrated Group Holdings, and Palisade Enterprises have operated in the glass and glazing business.

14.     Midwest Steel has operated in the structural steel fabrication business.

15.     Builder's Rebar has operated in the fabricated rebar business.

16.     The Surety provided performance and payment bonds (the "Bonds") to Blu Rock, Integrated Group Holdings, Sinclair Masonry and Pal's Glass (collectively the "Bonded Principals").

17.     Pursuant to certain construction contracts, the Bonded Principals had obligations to named obligees in the contracts (collectively these are the "Bonded Contracts").

18.     The Bonded Principals defaulted on most if not all the Bonded Contracts.

19.     The Surety completed performance and paid payment bond claims arising from the defaults of the Bonded Principals.

20.     The Surety believes that most if not all of the Bonded Principals have ceased operations and continued under different operating structures, including, but not limited to, Midwest Steel, Builder's Rebar and/or Palisade Enterprises.

21.     The Surety also believes that any remaining proceeds from the Bonded Contracts were potentially used by the Bonded Principals to fund these different operating structures, including Midwest Steel, Builder's Rebar and/or Palisade Enterprises.

22.     Upon information and belief, Tim L. Sinclair ("Sinclair") has owned and operated Pal's Glass, Integrated Group Holdings, Blu Rock, and now owns and/or operates Midwest Steel, Builder's Rebar and Palisade Enterprises.

23.     Similarly, upon information and belief, David Haynes ("Haynes") has had an ownership interest in Pal's Glass, Integrated Group Holdings, Integrated Properties, Blu Rock, and now has an ownership interest in Midwest Steel, Builder's Rebar and Palisade Enterprises.

24.     On October 30, 2017, in consideration of the Surety providing the Bonds, Sinclair executed a certain *General Indemnity Agreement* ("GIA"), signing on behalf of Pal's Glass; Sinclair Masonry; Integrated Group Holdings; Integrated Properties; Gorilla Concrete, LLC (now Blu Rock).  A true and accurate copy of the GIA (with redaction) is attached hereto as **Exhibit A** and is incorporated herein by reference.

25.     Sinclair and Haynes also executed the GIA in their individual capacities.

26.     While Sinclair and Haynes are both indemnitors for the Bonds issued by the Surety, they each filed individual bankruptcies, and as a result, their obligations to the Surety were discharged.

***Sinclair and Haynes' Continuation Through Midwest Steel, Builder's Rebar and Palisade Enterprises***

27.     Midwest Steel and Builder's Rebar are owned by Sinclair and Haynes.

5

28.     The Surety believes Sinclair and/or Haynes own or have an ownership interest in Palisade Enterprises.

29.     The Surety believes Midwest Steel, Builder's Rebar and/or Palisade Enterprises (collectively, "Sinclair's Continuing Companies") are a continuation of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass.

30.     Sinclair's Continuing Companies are considered alter-egos of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass.

31.     Sinclair's Continuing Companies are also alter-egos of Sinclair and Haynes, respectively, to the extent of their indemnity obligations to the Surety.

32.     Sinclair's Continuing Companies are considered a direct or indirect subsidiary, successor, affiliate, or parent of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass.

33.     Similarly, Sinclair's Continuing Companies are successors of Sinclair and Haynes, respectively, to the extent of their indemnity obligations to the Surety.

34.     Sinclair's Continuing Companies worked with Sinclair, Haynes, Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass to shirk corporate formalities for the benefit of Sinclair, Haynes and/or any or all of Sinclair's Continuing Companies.

35.     Any or all of Sinclair's Continuing Companies are merely corporate façades in an effort for Sinclair, Haynes, Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass to avoid their obligations to the Surety.

36.     The Surety believes that any or all of Sinclair's Continuing Companies benefitted from Sinclair and/or Haynes' purposeful undercapitalization of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass.

37.     The Surety believes that dividends of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass were not paid and that it is possible proceeds from the Bonded Contracts were diverted to the benefit of other entities their owners had an interest, including Midwest Steel, Builder's Rebar and/or Palisade Enterprises, that Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and Pal's Glass had little or no corporate formalities, and did not disclose to the Surety the problems they faced or the interrelated structure of these companies, including that Midwest Steel, Builder's Rebar and Palisade Enterprises existed and were part of this interrelated structure owned and operated by Sinclair and/or Haynes.

38.     Based on these facts, Midwest Steel, Builder's Rebar and Palisade Enterprises, respectively, are considered to be an "Indemnitor" and "Principal" as defined in the GIA.

39.     Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry, Pal's Glass, Midwest Steel, Builder's Rebar, and Palisade Enterprises (collectively, the "Indemnitors") are jointly and severally liable to the Surety pursuant to the GIA.

***The Indemnitors' Obligations Pursuant to the GIA***

40.     The GIA makes the Indemnitors jointly and severally liable to the Surety for all payments made under the Bonds and all costs, damages, and monies paid or expended by the Surety in connection to its performance on the Bonds.

41.     Additionally, the GIA was made "for the purpose of collateralizing, exonerating, and indemnifying the Surety for any Bonds issued pursuant to this Agreement (the GIA)."

7

42.     More specifically, paragraph 3 of the GIA provides indemnity to the Surety, stating:

> INDEMNITY - Principals and Indemnitors agree to indemnify and hold harmless Surety from and against any Liability & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Principals or Indemnitors to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Principals' and Indemnitors' obligations to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore and shall extend to any payments made by Surety under the Good Faith belief that (a) Surety was or might be liable therefor or (b) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. In the event of payments by Surety, Principals and Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety. The Surety may, but shall not be obligated to, join any or all of the Principals or Indemnitors as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Principals or Indemnitors. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

43.     Paragraph 4 requires Indemnitors to post collateral, stating:

> POSTING OF COLLATERAL - **Principals and Indemnitors agree to deposit collateral immediately upon demand by Surety** an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the

8

claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (e) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principal; and (f) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principals or Indemnitors. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability & Loss already incurred, as reserve to cover the amount of any potential Liability & Loss, or for any other purpose related to any Liability & Loss for which the Indemnitors would be required to collateralize, exonerate, or indemnify Surety under the terms of this Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principal or Indemnitor, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount of either (a) through (f) herein, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to (a) through (f) herein. In the event that the Principals and Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling the deposit of collateral. Surety agrees to refund any unused portion of the deposit,

without any interest or other damages for loss of use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

[Emphasis added].

44.     Paragraph 5 requires Indemnitors to assign certain rights under all Bonded

Contracts, stating:

> ASSIGNMENTS - **In the event of a Default, Principals and Indemnitors do hereby assign, transfer and set over to Surety**, as of the date of execution of each Bond, all of their rights under all Bonded Contract(s) including: (a) their right, title and interest in all subcontracts, purchase orders, and any surety bonds supporting such agreements, let in connection therewith; (b) **all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for use in connection with the Bonded Contract(s) including all materials ordered or fabricated for the Bonded Contract(s);** (c) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties arising from or relating to the Bonded Contract(s); (d) any and all sums due, or to become due under the Bonded Contract(s), including all monies earned or unearned which are unpaid at the time of notice from Surety to the Obligee regarding such sums; (e) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which Surety has issued bonds, and expressly authorize Surety to use these property rights as required in Surety's discretion to complete the Bonded Contract(s); and (f) any other rights to payment from any person or entity in relation to the Bonded Contracts, including but not limited to, any insurance proceeds or premium refunds, any tax or assessment refunds, or any rights to payment by virtue of participation in a partnership, joint venture, or the like. In the event that the Surety receives any monies in excess of the total amount of its Liability & Loss or potential Liability & Loss on any individual Bond or Bonded Contract, Surety shall be entitled to apply any such excess amounts toward the Surety's Liability & Loss or potential Liability & Loss on any other Bonds or Bonded Contracts until the Surety has been fully reimbursed and collateralized as provided by the terms of this Agreement. In the event of Default, Principals and Indemnitors further hereby agree to appoint and designate Surety and its authorized representatives as their respective Attorneys-in-Fact with power to (i) endorse and sign in the name of Principals or Indemnitor, as payee or otherwise, all documents and all checks,

drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s); (ii) receive, collect and disburse the proceeds of all such checks, drafts or warrants; and (iii) direct the Obligee or project owner to deposit any further progress payments or other forms of payment in relation to a Bonded Contract to a specific bank account, or to make checks payable, jointly, to the Principal and the Surety or to the Principal and such laborers, materialmen, or others as may be indicated by the Surety; and (iv) execute any and all documents in connection with the Bonded Contract(s) consistent with the Surety's rights as assignee per the terms of this paragraph.

[Emphasis added].

45.     Paragraph 6 provides that the Surety shall have the right to file a UCC-1 giving the

Surety a security interest in its rights granted in the GIA.  This provision provides:

> FILING OF AGREEMENT UNDER THE UCC - This Agreement shall constitute a Security Agreement and grants to Surety a security interest in all assets, and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of Surety's rights under this Agreement or otherwise. Each Indemnitor hereby irrevocably appoints and designates Surety or its authorized representative as its respective Attorneys-in-Fact to sign any Financing Statement or any other form which may be required in order to file the same in any jurisdiction or office. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

46.     Paragraph 9 grants the Surety the exclusive right to decide and determine claims

made under the Bonds, providing:

> CLAIMS - Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's Good Faith belief that it is or could be liable or because the Surety deems it necessary or expedient to

11

do so, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principals or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall, upon request: (a) provide a reasonable basis or bases for litigating such claim or demand, or defending such suit, or appealing from such judgment; and (b) deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys' fees.

47.     Paragraph 21 makes all funds due or to become due under any of the Bonded

Contracts impressed with an express, constructive, and/or resulting trust.  The provision states:

> TRUST FUND - Principals and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are impressed with an express, constructive, and/or resulting trust, whether in the possession of Principals or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principals incur obligations in the performance of such contract for which Surety would be liable under any Bond, which express, constructive, and/or resulting trust also inures to Surety's benefit… All funds due or to become due under any Bonded Contract, which constitute trust funds, shall be used for the sole purpose of performance or payment of obligation under the Bonded Contract for which Surety would be liable under its Bond(s), until that purpose has been fully satisfied…

48.     In the GIA, "Default" is defined in pertinent part, as any instance or condition

where one or more of the Bonded Principals and/or the Indemnitors have or are alleged to have:

(1) Forfeited, breached, abandoned, repudiated, or defaulted any Bonded Contract; (2) Neglected

or refused to pay for any indebtedness for labor, materials, or services used in the prosecution of a

Bonded Contract; (3) failed to honor any obligation under this Agreement; (4) Violated any other

written agreement with Surety, or (5) Failed to procure the discharge of Surety from any Bond

upon Surety's request.

***The Losses Under the Bonds Paid by the Surety***

49.     The Surety issued the Bonds to the Bonded Principals in the total penal sum of $7,872,414.10.

50.     As a result of the defaults, the Surety paid losses under the Bonds that exceeded $4,500,000.

***The Surety Made Demand that the Bonded Principals and Indemnitors Post Collateral but they Refused and Failed to Adhere to their Obligations***

51.     On November 21, 2018, the Surety sent written demand to the Bonded Principals and the Indemnitors that each satisfies the obligation to immediately post $3,000,000 in collateral pursuant to the requirements on them from the GIA.

52.     The Surety sent another written demand on January 18, 2019 to the Bonded Principals and Indemnitors that each satisfy the obligation to immediately post $4,500,000 in collateral pursuant to the GIA.

53.     Any or all of Sinclair's Continuing Companies had actual or at least constructive notice of the Surety's written demands but failed and refused to satisfy the obligations owed to the Surety.

54.     The Bonds were issued to the Bonded Principals in exchange for the agreement made by the Bonded Principals and the Indemnitors to indemnify and hold the Surety harmless from any loss incurred as a result of non-performance by the Bonded Principals.

55.     The Bonded Principals and the Indemnitors have refused to post collateral or otherwise protect the Surety from suffering irreparable harm, including paying the Surety for the losses under the Bonds paid by the Surety, and as a result, are in default of their obligations under the GIA and otherwise to the Surety.

## COUNT I – BREACH OF CONTRACT AGAINST THE INDEMNITORS

56.     The Surety realleges and incorporates every allegation of the preceding paragraphs as though fully set forth below.

57.     The GIA is a binding contract that the Indemnitors agreed and covenanted to indemnity and hold the Surety harmless for losses it suffered due to its performance under the Bonds.

58.     The Surety provided valuable consideration for the GIA, including, but not limited to, issuing the Bonds and fulfilling its duties to pay the losses claimed under the Bonds.

59.     The Surety has fully performed its duties and obligations under the GIA, but the Indemnitors have failed and refused to perform their duties and obligations owed to the Surety and as a result, have breached the GIA.

60.     The Surety made demand upon the Indemnitors to post collateral and to pay the Surety for the losses it suffered under the Bonds, but the Indemnitors failed and refused to perform.

61.     The Surety is damaged in an amount that exceeds $4,500,000 and will continue to be damaged unless and until th Indemnitors satisfy their obligations owed to the Surety under the GIA.

62.     The Surety is entitled to its attorney's fees and costs, as provided for in the GIA.

**WHEREFORE**, Plaintiff, Philadelphia Indemnity Insurance Company prays for judgment on Count I in its favor and against Defendants, Pal's Glass Service, Inc., Sinclair Masonry, Inc., Integrated Group Holdings, Inc., Integrated Properties, LLC, Gorilla Concrete, LLC now known as Blu Rock Concrete, LLC, Midwest Steel Fab, LLC, Builder's Rebar, LLC, and Palisade Enterprises, LLC, jointly and severally; that the Surety is awarded its attorney's fees, costs and expenses and for such other and further relief as this Court deems is just and proper.

## COUNT II – BREACH OF THE DUTY TO INDEMNIFY BY MIDWEST STEEL, BUILDER'S REBAR AND PALISADE ENTERPRISES

63.     The Surety realleges and incorporates every allegation of the preceding paragraphs as though fully set forth below.

64.     Alternatively, any or all of Sinclair's Continuing Companies are owned and operated by Sinclair and/or Haynes and are a continuation of Blu Rock, Integrated Group Holdings, Integrated Properties, Sinclair Masonry and/or Pal's Glass.

65.     Through their actions, any or all of Sinclair's Continuing Companies have undertaken a duty to indemnify the Surety for the losses under the Bonds it has paid.

66.      Any and all of Sinclair's Continuing Companies have failed in their duty to indemnify the Surety for the losses under the Bonds it has paid.

68.     Midwest Steel, Builder's Rebar and Palisade Enterprises are jointly and severally liable to the Surety for such losses.

69.     The Surety has incurred losses under the Bonds exceeding $4,500,000 and will continue to incur damages until it is paid.

**WHEREFORE**, Plaintiff, Philadelphia Indemnity Insurance Company prays for judgment on Count II in its favor and against Defendants, Midwest Steel Fab, LLC, Builder's Rebar, LLC, and Palisade Enterprises, LLC, jointly and severally; that the Surety is awarded its costs and expenses and for such other and further relief as this Court deems is just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL CAUSES OF ACTION PERMITTED BY LAW**

Respectfully submitted,

**LEVY CRAIG LAW FIRM**
A Professional Corporation

By     */s/ Jason S. Leiker*

    Jason S. Leiker          KS #20675
    James A. Breckenridge    KS #27131
    4520 Main Street, Suite 1600
    Kansas City, Missouri 64111
    (816) 474-8181
    Fax: 816/382-6606
    jleiker@levycraig.com
    jbreckenridge@levycraig.com
*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1ˢᵗ day of October 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By U.S. First Class Mail to the following:

BD Registered Agent, Inc., Resident Agent
RE:  Pal's Glass Service, Inc.
301 N. Main, Suite 600
Wichita, Kansas 67202
*Pro Se Defendant*

Tim Sinclair, Registered Agent
RE:  Blu Rock Concrete, LLC
301 N. Francis Street
Wichita, Kansas 67202
*Pro Se Defendant*

BD Registered Agent, Inc., Resident Agent
RE:  Integrated Group Holdings, Inc.
301 N. Main, Suite 600
Wichita, Kansas 67202
*Pro Se Defendant*

Milo M. Unruh, Jr., Registered Agent
RE:  Sinclair Masonry, Inc.
300 W. Douglas, Suite 330
Wichita, Kansas 67202
*Pro Se Defendant*

BD Registered Agent, Inc., Resident Agent
RE:  Integrated Properties, LLC
301 N. Main, Suite 600
Wichita, Kansas 67202
*Pro Se Defendant*

*/s/ Jason S. Leiker*
*Attorney for Plaintiff Philadelphia Indemnity Insurance Company*