**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

      *Plaintiff,*

vs.

      Case No. 6:19-CV-01026-EFM-KGG

MIDWEST STEEL FAB, LLC;
BUILDER'S REBAR, LLC;
PALISADE ENTERPRISES, LLC;
PAL'S GLASS SERVICE, INC.;
INTEGRATED GROUP HOLDINGS, INC.;
INTERGRATED PROPERTIES, LLC;
BLU ROCK CONCRETE, LLC;
SINCLAIR MASONRY, INC.

      *Defendants.*

**MEMORANDUM AND ORDER**

Plaintiff Philadelphia Indemnity Insurance Company filed suit against Defendants Midwest Steel Fab, LLC, Builder's Rebar, LLC, Palisade Enterprises, LLC, Pal's Glass Service, Inc., Integrated Group Holdings, Inc., Integrated Properties, LLC, Blu Rock Concrete, LLC, and Sinclair Masonry, Inc., alleging breach of contract and breach of duty to indemnify. Defendants Midwest Steel Fab, LLC, Builder's Rebar, LLC, and Palisade Enterprises, LLC, filed a Motion to Dismiss both counts (Doc. 47) asserting that Philadelphia Indemnity Insurance Company fails to state a claim under which relief may be granted. For the reasons stated below, the Court denies the motion.

# I.    Factual and Procedural Background[1]

Philadelphia Indemnity Insurance Company (the "Surety") provided performance and payment bonds ("Bonds") to Gorilla Concrete, LLC (now Blu Rock Concrete, LLC), Integrated Group Holdings, Inc., Sinclair Masonry, Inc., and Pal's Glass Service, Inc. (collectively the "Bonded Companies").  In consideration of the Surety providing the Bonds, Tim Sinclair executed a General Indemnity Agreement ("GIA").  He signed the GIA, in Kansas, as an individual indemnitor and on behalf the Bonded Companies and one other company (collectively the "Indemnitor Companies").  David Haynes also signed as an individual indemnitor.

Under certain construction contracts, the Bonded Companies had obligations to named obligees in the contracts (the "Bonded Contracts").  The Bonded Companies defaulted on the Bonded Contracts.  The Surety completed performance and paid the payment bond claims arising from the defaults on the Bonded Contracts.  The Surety issued the Bonds in the amount of $7,872,414.10.  Due to the defaults, the Surety paid losses under the Bonds exceeding $4,500,000.

The Surety sent two written demands to the Bonded Companies and the indemnitors demanding that each satisfy its obligation under the GIA and immediately post collateral, first in the amount of $3,000,000 and second, in the amount of $4,500,000.  The Bonded Companies and the indemnitors have not posted collateral or otherwise aided the Surety in recovering its losses.  As individual indemnitors, Sinclair and Haynes have both been discharged of their obligations to the Surety following their individual bankruptcy filings.

---

[1] The facts come from Plaintiff's Amended Complaint.  The Court accepts them as true and views them in the light most favorable to Plaintiff for the purposes of this ruling.

The Bonded Companies have ceased operations. However, they allegedly continue to operate as Midwest Steel Fab, LLC, Builder's Rebar, LLC, and Palisade Enterprises, LLC (the "Subsequent Companies"). The Surety alleges that proceeds from the Bonded Contracts were used by the Bonded Companies to fund the Subsequent Companies. Sinclair was an owner and operator of Pal's Glass, Integrated Group Holdings, Inc., and Blu Rock Concrete, LLC (some of the Indemnitor Companies). Sinclair is now is an owner and operator of the Subsequent Companies. Haynes also previously had ownership interest in Pal's Glass Service, Inc., Integrated Group Holdings, Inc., Integrated Properties, LLC, and Blu Rock Concrete, LLC (some of the Indemnitor Companies). Haynes now has an ownership interest in the Subsequent Companies. Additionally, the Subsequent Companies allegedly worked with the Indemnitor Companies to avoid their obligations to the Surety, benefitted from the undercapitalization of the Indemnitor Companies, and did not disclose to the Surety the interrelated structure of these companies.

The Surety filed an Amended Complaint in federal court on diversity jurisdiction alleging two counts. Count I is for breach of contract and Count II is for breach of duty to indemnify. The Subsequent Companies then jointly filed a Motion to Dismiss. They argue that the Surety fails to state a claim for breach of contract against the Subsequent Companies because there is no privity of contract between them. The Subsequent Companies also argue that the Surety's allegations do not state a plausible claim for breach of duty to indemnify under either express contractual indemnity or implied contractual indemnity. This matter is fully briefed, and the Court now rules as follows.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[4] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[5]

Viewing the complaint in this manner, the Court must decide whether a plaintiff's allegations give rise to more than speculative possibilities.[6] Rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[8] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[9] Although a plaintiff need not allege every element

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *Iqbal*, 556 U.S. at 678–79.

[6] *See id.* at 678.

[7] *Ridge at Red Hawk*, 493 F.3d at 1177.

[8] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[9] *Iqbal*, 556 U.S. at 679.

of its action in specific detail, it cannot rely on conclusory allegations.[10]  Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss.  However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[11]

### III.    Analysis

**A.    The Surety has stated a facially plausible claim for breach of contract.**

A federal court sitting in diversity applies the substantive law that would be applied by the forum state, including that state's choice of law rules.[12]  Kansas, the forum state here, applies the doctrine of lex loci contractus for contract interpretation and thus the law of the state where the contract is made will apply.[13]  A contract is made where the last act necessary for its formation occurs.[14]  In this case, the contract was formed when it was signed in Kansas, as the notarization on the GIA shows.  Therefore, Kansas state law will apply.

In Kansas, privity of contract is necessary to maintain a breach of contract claim.[15]  The Subsequent Companies argue that there is no privity of contract because they were not parties to the GIA.  While the Surety concedes that the Subsequent Companies were not parties to the GIA, it argues that the Subsequent Companies are liable as Indemnitors under the GIA.  The GIA requires "Principals" and "Indemnitors" to indemnify the Surety and defines "Indemnitors" to

---

[10] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[11] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citation omitted).

[12] *See Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989).

[13] *Novak v. Mut. of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 28 P.3d 1033, 1039 (2001).

[14] *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 4 P.3d 1149, 1160 (2000).

[15] *Pro. Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887, 891 (1984).

include "any present or future, direct or indirect, subsidiary, *successor, affiliate*, or parent of any Indemnitor or Principal" (emphasis added). The Surety argues that the Subsequent Companies are either a "successor" or "affiliate" and thus bound by the GIA as an "Indemnitor."

### 1. *Successor*

The Subsequent Companies argue that they are not "successors" within the meaning of the GIA because they are not "successor enit[ies]" as defined by K.S.A. § 17-6808a(e). That statute states:

> *As used in this section*, the term "successor entity" shall include any trust, receivership or other legal entity governed by the laws of this state to which the remaining assets and liabilities of a dissolved corporation are transferred and which exists solely for the purposes of prosecuting and defending suits, by or against the dissolved corporation, enabling the dissolved corporation to settle and close the business of the dissolved corporation, to dispose of and convey the property of the dissolved corporation, to discharge the liabilities of the dissolved corporation and to distribute to the dissolved corporation's stockholders any remaining assets, but not for the purpose of continuing the business for which the dissolved corporation was organized.[16]

The Court is not convinced that this definition applies in the instant case. The definition is not directly binding outside of the statutory section, and the legislature has not given any indication that it is meant to apply outside of K.S.A. § 17-68—the statutory article governing the dissolution and disposition of corporate assets. As the Subsequent Companies have asserted, the Indemnitor Companies have not legally dissolved, and therefore, K.S.A. § 17-68 does not apply here. Additionally, the definition in K.S.A. § 17-6808a(e) was not adopted in the GIA.

When interpreting written contracts, the primary rule is to ascertain the parties' intent.[17] "If the terms of the contract are clear, the intent of the parties is to be determined from the language

---

[16] K.S.A. § 17-6808a(e) (emphasis added).

[17] *Levin v. Maw Oil & Gas, LLC*, 290 Kan. 928, 234 P.3d 805, 814 (2010).

of the contract without applying rules of construction."[18]  The GIA states in its opening paragraph

that it is "for the purpose of collateralizing, exonerating, and indemnifying Surety for any Bonds

issued pursuant to this Agreement."  It then defines the term "Indemnitors" broadly, including

"successors" or "affiliates" of any Indemnitor or Principal.  Given this language of the GIA, the

parties' apparent intent was to give the Surety wide-ranging protection.  The GIA, however, does

not define "successor."  Thus, the Court looks to the basic definition provided in Black's Law

Dictionary.  It defines "successor" as "[a] corporation that, through amalgamation, consolidation,

or other assumption of interests, is vested with the rights and duties of an earlier corporation."[19]

Here, the Surety alleges that there was an assumption of interests, namely that proceeds

were transferred from the Indemnitor Companies to the Subsequent Companies.  The Surety also

alleges that the Subsequent Companies are a continuation of one or more of the Indemnitor

Companies.  These facts show an assumption of interests that may have vested the Subsequent

Companies with the rights and duties of the one or more of the Indemnitor Companies.  Because

the facts pleaded are sufficient to support successorship, and thus privity of contract, the Surety

has stated a facially plausible claim for breach of contract based on successorship.

### 2. *Affiliate*

The Subsequent Companies also assert that they are not "affiliates" under the GIA and thus

are not liable as Indemnitors.  According to the Subsequent Companies, limited liability companies

are separate legal entities apart from their members, and therefore, Sinclair and Haynes cannot

create a legal relationship between the Subsequent Companies and the Indemnitor Companies.

---

[18] *Id.* (quoting *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 153 P.3d 550, 554 (2007)).

[19] *Successor*, Black's Law Dictionary (11th ed. 2019).

The Court, however, disagrees. The fact that limited liability companies are considered separate legal entities does not foreclose the creation of an affiliation. Corporations are also separate legal entities, and courts have found that they may be affiliates despite this separate status.[20] Furthermore, courts have found that limited liability companies are "corporations" for the purposes of the term "affiliate" in other contexts.[21] Thus, the Court concludes that limited liability companies may be considered affiliates.

As with "successor," discussed above, the GIA does not define the term "affiliate." Thus, the Court looks to the basic definition provided in Black's Law Dictionary. It defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or *other means of control*; a subsidiary, parent, or sibling corporation."[22] As limited liability companies, the Subsequent Companies may be affiliates of the Indemnitor Companies. Although they are not related by shareholders, the Surety alleges that Sinclair was an owner and operator of some of the Indemnitor Companies and the Subsequent Companies. It also alleges that Haynes was an owner of some of the Indemnitor Companies and is an owner of the Subsequent Companies. These facts show a common means of control, namely Sinclair and Haynes. Because the facts pleaded are sufficient to support affiliation, and thus privity of contract, the Surety has stated a facially plausible claim for breach of contract based on affiliation.

---

[20] *See e.g. Fairlawn Plaza Dev., Inc. v. Fleming Co.*, 210 Kan. 459, 502 P.2d 663, 670 (1972) (finding that separately incorporated supermarkets could be affiliates given common ownership).

[21] *In re Brooke Corp.*, 506 B.R. 560, 567 (Bankr. D. Kan. 2014) (finding that, in the bankruptcy context, a limited liability company fit within the definition of "corporation" and could therefore be an "affiliate"); *see also White ex rel. B.W. II, LLC v. Barbieri*, 284 P.3d 375, 2012 WL 3966527, *4 (Kan. Ct. App. 2012) (finding that a limited liability company was a business organization similar to a corporation for purposes of a lawyer-client relationship).

[22] *Affiliate*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see also* 18 C.J.S. *Corporations* § 8.

The Surety has pleaded facts sufficient to support a plausible claim for breach of contract based on the alternative theories that the Subsequent Companies are either successors or affiliates of the Indemnitor Companies and thus liable as "Indemnitors" under the GIA. Therefore, the Court denies the Motion to Dismiss for failure to state a claim as to Count I of the Surety's complaint.

**B.      The Surety has stated a facially plausible claim for implied indemnity.**

The Surety's breach of duty to indemnify claim is based on common law indemnity. In Kansas, common law indemnity is a tort action.[23] Therefore, the Court looks to Kansas' general tort conflicts rule to determine what substantive law governs.[24] The Kansas Supreme Court has held that the law of the state where the tort occurs, *i.e.*, where the wrong was felt, controls.[25] The wrong in this case is the financial harm the Surety allegedly suffered as a result of the Subsequent Companies' conduct. Although the Surety states that it is a Pennsylvania corporation, it conducts business in Kansas, and both parties cite Kansas law in their briefs. Therefore, the Court will apply Kansas law.

The Subsequent Companies assert that Count II should be dismissed because it is duplicative of Count I. The Surety argues that Count II is not duplicative, but rather, a separate claim for implied indemnity.[26] In Kansas, "[i]mplied contractual indemnity arises when one is compelled to pay what another party ought to pay; generally, when a party without fault is made

---

[23] *See Hartford Fire Ins. Co. v. P & H Cattle Co.*, 2006 WL 2135189, at *3–4 (D. Kan. 2006).

[24] *St. Paul Furniture Mfg. Co. v. Bergman*, 935 F. Supp. 1180, 1186 (D. Kan. 1996).

[25] *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 735 (1985).

[26] The Surety generally argues that Count II is a claim for "implied indemnification." Because the rule it proffers matches Kansas' rule of implied contractual indemnity and Kansas' comparative implied indemnification does not apply here, the Court concludes that Count II is for implied contractual indemnity.

to pay for a tortious act of another and seeks indemnity from the party at fault."[27] This is a distinct action separate from breach of contract and independent from "the transaction or situation which gave rise to the right of indemnity."[28] As a claim for implied contractual indemnity, Count II is an independent claim, and as such the Court concludes it should not be dismissed as a repetitive claim.

The Subsequent Companies also argue that if the Court recognizes Count II as a claim for implied indemnity, then the claim fails because the Surety has not plead an underlying tortious act. A claim for implied contractual indemnity must be based on tortious conduct.[29] When determining if there are facts sufficient to support a claim with a tortious act as an element, the Tenth Circuit has found that reciting the name of the tortious act alone is insufficient if the claim is not otherwise plausible.[30] And while alleging the elements of a cause of action help to determine whether a plaintiff has set forth a plausible claim, the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in its complaint.[31] Rather, the standard " 'calls for enough fact[s] to

---

[27] *Poindexter v. Morse Chevrolet, Inc.*, 2007 WL 4246860, at *3 (Kan. Ct. App. 2007) (citing *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 199 (1983)).

[28] *U.S. Fid. & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 824 (D. Kan. 1996) (citation omitted).

[29] *Culbertson v. United States*, 960 F. Supp. 1497, 1507 (D. Kan. 1997) (finding that without a tortious act set forth, there was not a claim for implied contractual indemnification); *see also Edward Kraemer & Sons, Inc. v. City of Kansas City*, 874 F. Supp. 332, 336 (D. Kan. 1995) (finding that economic damages from a breach of contract was not sufficient for a claim of implied contractual indemnification).

[30] *Domoney v. Class Ltd.*, 2013 WL 5276125, at *4 (D. Kan. 2013) (interpreting *Phillips v. Bell*, 365 F. App'x 133, 136–137 (10th Cir. 2010), in which a tortious act was an element of the plaintiff's claim under the Federal Wiretap Act and the plaintiff listed off tortious acts which were implausible given the other facts pleaded).

[31] *Domoney*, 2013 WL 5276125, at *2.

raise a reasonable expectation that discovery will reveal evidence of' misconduct required for relief."[32]

In this case, the Surety does not list by name the potential tortious acts. Instead, it alleges several facts indicative of tortious conduct, including that: (1) the Subsequent Companies worked with the Indemnitor companies to avoid their obligations to the Surety, (2) the Subsequent Companies took money diverted from the Indemnitor Companies that was owed to the Surety, and (3) the Subsequent Companies did not disclose to the Surety the interrelated structure of these companies. While the Surety has not stated a prima facie case for a tortious act, these facts taken together create a reasonable expectation that discovery will reveal evidence of a tortious act required for relief. Therefore, the Court concludes that the Surety has met the minimum pleading requirements for their claim of implied contractual indemnity. Consequently, the Court denies the Subsequent Companies' Motion to Dismiss Count II of the Surety's claim.

### C.     The Bankruptcies' Automatic Injunction

Finally, the Subsequent Companies argue that the Surety's claims were discharged by Sinclair's and Haynes's respective bankruptcies, or that the claims should have been asserted in their bankruptcy actions. In response, the Surety argues that the discharge of Sinclair's or Haynes's respective indemnification obligations does not affect the liability of the other indemnitors. As the Subsequent Companies point out, as limited liability companies, they are regarded as separate legal entities.[33] Generally in bankruptcy, the separate legal existence of

---

[32] *Phillips*, 365 F. App'x at 138 (10th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

[33] K.S.A. § 17-7673 (stating that a limited liability company formed under Kansas law is a separate legal entity).

business entities is respected.[34]  Furthermore, 11 U.S.C. § 524(e) provides that, subject to a narrow exception, "discharge of a debt of the debtor does not affect the liability of *any other entity* on, or the property of any other entity for, *such debt*."[35]  That is, the debt still exists and "can be collected from any other entity that may be liable."[36]

Here, the claims are against the Indemnitor Companies and the Subsequent Companies, not against one of the debtors, Sinclair or Haynes.  Sinclair's and Haynes's relationship to the companies are facts supporting the continuation or common control of the Subsequent Companies. Therefore, the discharge following their bankruptcies does not apply to either the Indemnitor Companies or the Subsequent Companies.   Because the claims are sufficiently pleaded and are not barred by the Bankruptcy Code, the Court denies the Motion to Dismiss for failure to state a claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 47) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of July, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[34] *See Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (declining to extend the stay provisions of the Bankruptcy Code to the solvent codefendants of the debtor).

[35] 11 U.S.C.A. § 524(e) (emphasis added).

[36] *In re W. Real Est. Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) (citation omitted).